UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 14-00051-01 |
| VERSUS | JUDGE ROBERT G. JAMES |
| KIMBERLIA HARRIS | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court are Defendant Kimberlia Harris' ("Harris") Motion to Sever Trial from Co-Defendants ("Motion to Sever") [Doc. No. 52] and Motion to Dismiss [Doc. No. 54]. The Government has filed an "In Globo Response" to the motions[1] [Doc. No. 56]. Harris filed a reply in support of her motions. [Doc. No. 57]. For the following reasons, Harris' motions are DENIED.

## ALLEGED FACTS

Harris and her Co-Defendants, Angela Woods and Willie Mae Jackson-Woods, are each charged in a twelve-count Indictment with conspiracy to defraud the United States, the transfer or unauthorized use of food stamps (SNAP fraud), wire fraud, and WIC fraud.

Harris was the owner of Dee's Grocery Store ("Dee's") in Monroe, Louisiana. Co-Defendant Willie Mae Jackson-Woods ("Jackson-Woods") was the manager of the store, and Co-Defendant Angela Woods ("Woods") was an employee at the store.

Harris completed SNAP and WIC applications for Dee's to become an authorized retailer

---

[1]The Government also responds to Harris' Motion to Suppress, but that motion is pending before Magistrate Judge Karen L. Hayes and will be addressed separately.

for those programs, both of which were later approved.  The Indictment alleges that beginning on or about August 8, 2008, and continuing until their arrest, all Defendants "devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from the SNAP and WIC programs by means of materially false and fraudulent pretenses, representations, and promises." [Doc. No. 1, ¶ 27].  The Indictment further alleges that the Defendants conspired to profit by exchanging SNAP and WIC benefits for lesser amounts of cash and by allowing the program benefits to be used to purchase ineligible items, such as cigarettes.

## LAW AND ANALYSIS

### A.      Motion to Sever

Harris first moves for severance of her trial from that of her Co-Defendants, particularly the trial of Jackson-Woods.  Harris argues that most of the evidence does not pertain to her, that she has an antagonistic defense, and that she would be unable to cross examine her Co-Defendants on videotaped surveillance.  Harris explains that Dee's was formerly run by her boyfriend, who is now deceased.  He had hired his relatives, including Jackson-Woods and Woods, to work in the business, but Harris did not participate in the day-to-day activities.  She contends that Jackson-Woods wanted to become the owner of Dee's after the death of Harris' boyfriend.  When Harris became the owner instead, Jackson-Woods allegedly threatened to get her in trouble, claiming that she could do so because everything in the business was in Harris' name.  Harris argues that she and her Co-Defendants have antagonistic defenses because she will claim that she was not involved in the daily running of the business, worked at another business, and had no knowledge of the alleged illegal activities.  In contrast, she anticipates that Jackson-Woods will try to place the blame on her as owner.  According to Harris, the Government's

2

"scatter gun approach" in this case has caused "confusion for the investigators, confusion for the government, confusion for the court and most certainly will result in confusion for the jury" without severance. [Doc. No. 57, p. 2].

The Government contends that the Defendants are properly joined for trial and that there is no specific and compelling prejudice to justify severance.  Contrary to Harris' allegations that the evidence is heavily weighted against her Co-Defendants, the Government points out that there is video footage of Harris at the cash register when undercover agents exchanged SNAP/WIC benefits for cash.  The Government argues further that even if there is some prejudicial spillover effect from the evidence against Jackson-Woods and Woods, this spillover is not sufficient to justify severance.  Next, the Government responds that Harris has failed to meet the minimal standard supporting severance based on her alleged desire to call Co-Defendants as witnesses.  Finally, the Government contends that, even if the defenses of the Defendants are antagonistic, Harris has failed to show that they are mutually exclusive and irreconcilable.

The Fifth Circuit has consistently held that when persons are indicted together, they should be tried together.  *United States v. McKinney,* 53 F.3d 664 (5th Cir. 1995);  *United States v. Wilwright,* 56 F.3d 586 (5th Cir. 1995).  This is especially true when a conspiracy is charged. *United States v. Neal*, 27 F.3d 1035, 1045 (5th Cir. 1994).   Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)).

Rule 14 of the Federal Rules of Criminal Procedure provides that a court may grant a

severance of defendants when it appears that a defendant will be prejudiced by a joint trial.  FED. R. CRIM. P. 14.  To justify severance of co-defendants, the movant must show that he would suffer specific and compelling prejudice against which the court is unable to provide protection, such as through a limiting instruction, and that this prejudice would result in an unfair trial. *United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir. 1988) (citing *United States v. Toro*, 840 F.2d 1221, 1238 (5th Cir. 1988)); *see also United States v. Lewis*, 476 F.3d 369, 383 (5th Cir. 2007) (citing *United States v. Sudeen*, 434 F.3d 384, 387 (5th Cir. 2005)).  The United States Court of Appeals for the Fifth Circuit has "held that a quantitative disparity in the evidence is clearly insufficient in itself to justify severance . . . . [and] . . . that the mere presence of spillover effect does not ordinarily warrant severance." *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993) (internal citations and quotations omitted).  "[E]ven where defendants have markedly different degrees of culpability, severance is not always required if less drastic measures, such as limiting instructions will suffice to cure the prejudice."  *Burton v. United States*, 237 F.3d 490, (5th 2000) (citing *United States v. Broussard*, 80 F.3d 1025, 1037 (5th Cir.1996)).  Moreover, more than a mere showing of "antagonistic" defenses is necessary to support severance.  *United States v. Berkowitz*, 662 F.2d 1127, 1133 (5th Cir. 1981).  The defenses must also be mutually exclusive and irreconcilable. *United States v. Romanello*, 726 F.2d 173, 177 (5th Cir.1984).  "A district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro,* 506 U.S. at 539.

The Court finds no compelling reason for severance in this case.  All Defendants are charged with conspiracy in one count and with the same substantive conduct in the remaining

eleven counts.  With regard to the weight of the evidence and the potential spillover effect, the Court believes that the jury, with proper instruction, can separate and consider the Government's case against each Defendant.  Therefore, these concerns are insufficient to justify severance.[2]

Further, Harris has not demonstrated that a severance is necessary based on a possible desire to call her Co-Defendants as witnesses at trial.  She states only that she "will be prejudiced if the video surveillance [of her Co-Defendants] is admitted into evidence and this evidence cannot be dispelled by cross-examination if the [Co-Defendants do] not take the stand." [Doc. No. 52-1, p. 5]. Harris does not raise a *Bruton*[3] claim, nor does she contend that if a severance were granted one or both of her Co-Defendants would provide exculpatory testimony on her behalf.[4]  Rather, Harris' argument is that she would be prejudiced if video of the Co-Defendants, not Harris herself, is introduced at trial, and she cannot cross-examine Co-Defendants about the

---

[2]The Government's charging of former Co-Defendant Olympia Harris and subsequent dismissal of those charges against her provide no basis for Harris' contention in this motion that the jury will somehow be confused.

[3]In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that a criminal defendant's Sixth Amendment confrontation right is violated where a hearsay statement by his co-defendant inculpating the defendant is admitted into evidence, and the co-defendant does not testify.  391 U.S. at 126.

[4]If a defendant moves for severance based on the a co-defendant's willingness to testify on the defendant's behalf, the defendant must demonstrate "(1) a bona fide need for the testimony; (2) the testimony's substance; (3) its exculpatory nature and effect; and (4) the willingness of the [co-defendant] to testify."  *United States v. Tencer*, 107 F.3d 1120, 1132-33 (5th Cir. 1997) (citation omitted).  If the defendant makes this showing, "a court must consider, among other things, the significance of the testimony in relation to the defendant's theory of defense and the extent of prejudice caused by the absence of such testimony."  *Id.* at 1133 (citation omitted).

video.[5]  This argument, too, is insufficient to justify severance.

Finally, as the Government points out, Harris cannot obtain a severance on the basis that her defense may be antagonistic to her Co-Defendants.  At best, she has offered speculation that one of her Co-Defendants, Jackson-Woods, may attempt to place the blame on her.  Harris herself has said that she will deny any wrongdoing or that she knew about any wrongdoing, which may well be consistent with a defense by Jackson-Woods or Woods that they were not engaged in wrongdoing either.  At this point, Harris simply has not met her burden.

The Court has found that Harris has failed to show specific and compelling prejudice against which the Court is unable to provide protection or that such prejudice would result in an unfair trial.  Therefore, Harris' Motion to Sever is DENIED.  The Court will consider any redaction and/or limiting instructions to address her concerns.  If Harris seeks redaction and/or limiting instructions, she should submit her proposal with her other pre-trial submissions.

**B.      Motion to Dismiss**

Harris next moves to dismiss Count 2-7 of the Indictment, which charge Harris, Jackson-Woods, and Woods with the transfer or unauthorized use of food stamps or SNAP fraud. Harris argues that the Indictment is insufficient because it fails to allege "who did what," and it is unclear "whether movant is being charged as a principle or whether or not she is being charged directly with committing . . . the specific acts." [Doc. No. 54-1, p. 3].  Harris contends that the Government should have charged "each individual with what that individual is alleged to have done." [Doc. No. 57, p. 4].

The Government responds that the Indictment properly tracks the language of the statute

---

[5]Although the Government points out that there is video of Harris also, her arguments in the Motion to Sever relate only to video surveillance of Co-Defendants. [Doc. No. 52-1, p. 5].

and that, additionally, Count 1 details the manner and means of the conspiracy and scheme to defraud.

"The test of the sufficiency of an indictment is whether it charges all of the elements of the offense so that an accused may prepare his defense and be protected against double jeopardy." *United States v. Barksdale–Contreras*, 972 F.2d 111, 113 (5th Cir. 1992) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  The "'indictment need not precisely track the language of the statute; it is sufficient if it informs the defendant of every element of the offense charged.'" *Id.* (quoting *United States v. Hernandez*, 891 F.2d 521, 524 (5th Cir. 1989) (other citation omitted)).

In this case, Harris is charged in Counts 2-7 under 7 U.S.C. § 2024(b), which provides that whoever "knowingly uses, transfers, acquires, alters, or possesses benefits in any manner contrary to this chapter or the regulations issued pursuant to this chapter shall" be subject to certain penalties based on the value of the benefits.  The Indictment charges that Harris and her Co-Defendants

> knowingly used, transferred, acquired and possessed SNAP benefits, to wit, food stamp benefits, authorization cards and access devices of a value of $100.00 or more, in a manner contrary to Chapter 51 of Title 7, United States Code, in the United States Department of Agriculture (USDA) SNAP benefits totaling the amounts specified in the table . . . were acquired by the defendants, KIMBERLIA HARRIS, ANGELA WOODS, . . . and WILLIE MAE JACKSON-WOODS, in exchange for cash in the amounts specified in the table . . . and other ineligible items such as tobacco, which was prohibited by statute and regulations governing SNAP.

[Doc. No. 1, pp. 8-9].  The Indictment further cites 18 U.S.C. § 2, which is the aiding and abetting statute.

7

After consideration of the Indictment and review of the statute under which Harris is charged, the Court finds that the Government has sufficiently charged the elements of the offense.  Given the nature of the acts charged and the fact that Harris is charged both in the conspiracy and with the substantive acts at issue, she has received sufficient notice of her alleged wrongful conduct.  Therefore, Harris' Motion to Dismiss Counts 2-7 is DENIED.

## **CONCLUSION**

For the foregoing reasons, Harris' Motion to Sever [Doc. No. 52] and Motion to Dismiss [Doc. No. 54] are DENIED.

MONROE, LOUISIANA, this 26th day of June, 2014.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**