UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION NO. 14-00051** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **KIMBERLIA HARRIS** | **MAGISTRATE JUDGE HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Suppress, [doc. # 53], filed by Defendant Kimberlia Harris. The Government opposes the Motion. For the reasons stated below, it is recommended that the Motion be **DENIED**.

**Background**

On December 4, 2013 the Government, via Special Agent Moses, presented an Affidavit to the undersigned in order to obtain a warrant to search and seize instrumentalities, fruits, and evidence of certain crimes at three locations: (1) A premises known as Dee's Grocery, located at 2801 Renwick Street, Monroe, Louisiana 71201; (2) A personal residence located at 761 Moore Road, Monroe, Louisiana 71202; and (3) a 2010 Buick LaCrosse. [doc. # 56-1, p. 1]. The undersigned Magistrate Judge signed the warrant on the same day, thus indicating that in her opinion the alleged facts constituted probable cause to search the three locations. *Id.* at 24.[1]

On March 13, 2014, based on the evidence and statements obtained during the search of

---

[1] Neither party challenges the propriety of the undersigned's role in the instant recommendation. The undersigned is cognizant of the potential conflict of interest present anytime a magistrate is asked to review his or her own probable cause determination; nevertheless, in the absence of any binding authority to the contrary, and considering that the District Judge will issue the final ruling, the undersigned will undertake review. *See U.S. v. Gove*, 2010 WL 678215, at *1 (E.D. Tex. 2010) (undertaking review under analogous circumstances and citing cases in support).

the three locations listed above, the Government charged Defendant, in a twelve-count Indictment, with conspiracy to defraud the United States, the transfer or unauthorized use of food stamps (SNAP fraud), wire fraud, and WIC fraud. [doc. # 1]. The Indictment alleges that Defendant was the owner of Dee's Grocery Store ("Dee's") in Monroe, Louisiana, and that Defendant obtained permission to become an authorized SNAP and WIC retailer. *Id.* The Indictment alleges further that, beginning on or about August 8, 2008, and continuing until her arrest, Defendant "devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from the SNAP and WIC programs by means of materially false and fraudulent pretenses, representations, and promises." *Id.* at 6. Finally, the Indictment alleges that Defendant conspired to profit by exchanging SNAP and WIC benefits for lesser amounts of cash and by allowing the program benefits to be used to purchase ineligible items, such as cigarettes. *Id.* at 6-7.

Defendant filed the instant Motion to Suppress on June 5, 2014. [doc. # 53]. She claims that the evidence the Government seized pursuant to its search warrant should be suppressed for four reasons: (1) the Government failed to support its warrant application with an affidavit of probable cause; (2) the Government failed to establish probable cause for the warrant's issuance; (3) the statements she provided during the search of her residence constitute fruits of the defective warrant; and (4) she did not voluntarily make the statements that she provided to the Government. [doc. # 53-1, p. 1].

## Law and Analysis

A. <u>Failure to Establish Probable Cause</u>

Defendant asserts that the Government failed to support its application for a search

warrant with an affidavit of probable cause, intentionally misled the magistrate judge when it applied for the warrant, and failed to establish probable cause for searching her residence.  [doc. #s 51, p. 1; 57, p. 3].

      i. <u>Failure to Support the Warrant Application with an Affidavit of Probable Cause</u>

Defendant originally claimed that the evidence seized pursuant to the Government's search warrant should be suppressed because the materials that the Government used to obtain the search warrant did not include an affidavit of probable cause.  [doc. # 53-1, p. 1].  Defendant made this argument because the Government did not produce the affidavit during discovery.  [doc. # 56, p. 9].  However, the Government responded to the instant Motion on June 12, 2012, and attached a copy of the duly sworn affidavit that Agent Moses signed and provided to the undersigned.  [doc. # 56-1].  Consequently, in her Reply, Defendant withdraws this claim and acknowledges that she "was under the impression that there was no affidavit in support of the warrant because [she] did not find one on file.  Accordingly, it is recommended that Defendant's Motion, with respect to this argument, be **DENIED AS MOOT**.

      ii. <u>Intentionally Misleading the Issuing-Judge</u>

Despite withdrawing her argument that the Government failed to supports its warrant application with an affidavit of probable cause—which was Defendant's primary argument initially—Defendant continues to argue that the evidence the Government obtained should be suppressed because the search warrant was not supported by probable cause.  [doc. # 57, p. 3].

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. CONST. amend. IV.  The courts deter Fourth Amendment violations by excluding evidence

obtained as a result of the transgression. *See U.S. v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (citation omitted). This so-called exclusionary rule requires the suppression of evidence that is seized pursuant to a warrant unsupported by probable cause. *U.S. v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (citation omitted). "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Gibbs, supra* (citation omitted). Thus, "[e]vidence obtained during the execution of a subsequently invalidated search warrant is *not* excluded *if* the officer executing the warrant relied on it in good faith." *Id*. If this good faith exception applies, then the inquiry ends. *Gibbs, supra*. The government bears the burden of demonstrating that the good faith exception applies. *U.S. v. Gant*, 759 F.2d 484, 487 (5th Cir. 1985).

If the good faith exception does apply, a reviewing court is obliged to defer to an issuing judge's probable cause determination in signing a warrant unless:

(1) the issuing-judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;

(2) the issuing-judge wholly abandoned his judicial role in such a manner that no reasonably well trained officer should rely on the warrant;

(3) the underlying affidavit is "bare bones" (so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable); or

(4) the warrant is so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.

*Gibbs, supra* (citations and internal quotation marks omitted). If the good faith exception does not apply, the court must consider whether the warrant was supported by probable cause. *Gibbs, supra*.

4

Here, Defendant appears to invoke the first qualifier above and argues that the good faith exception does not apply because Agent Moses misled the undersigned when she included information in the affidavit that she knew was false.[2] [doc. # 57, p. 3]. Defendant argues:

> The warrant was misleading and untrue. Sect. IV paragraph five (5) of the affidavit says that between June 2011 and May 2013 there were ten controlled EBT SNAP transactions at Dee's Grocery in which "the store owner and employees" accepted EBT SNAP benefits for cash. The agent who signed at the time knew full well that the statement made was not true and that at no time in any of the controlled transactions did the defendant do what she is accused of doing. It appears to be an attempt to embellish what had occurred and mislead the court.
>
> Any reasonable judge or magistrate reading the affidavit would come to the conclusion that [Defendant] was seen taking part in the ten (10) transactions when in fact the defendant was not present in at least eight of the ten transactions recorded by the government. The warrant was secured based upon a misrepresentation to the count [sic].

*Id.* The undersigned disagrees. The statement made in the affidavit supports a conclusion that the defendant was present at one or more of the transactions, but does not state that the defendant and the store employees were all present at all of the transactions. In addition, even if defendant's argument were persuasive, apart from her conclusory assertions, she fails to offer any proof or explanation indicating that the affiant's averments were false. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978) (holding that to mandate an evidentiary hearing with respect to an allegation that an affiant included a false statement, "the challenger's attack must be more than conclusory" and "must be accompanied by an offer of proof."). Thus the good

---

[2] Defendant also appears to invoke the second qualifier when she asserts, in conclusory fashion, that the undersigned "seemed to have abandoned her judicial oversight role." [doc. # 53-1, p. 4]. However, Defendant made this assertion in connection with her now-withdrawn argument that the undersigned issued the warrant without first receiving an affidavit of probable cause. Thus, as that argument was withdrawn, Defendant's assertion that the undersigned abandoned her judicial oversight role is moot.

faith exception applies and the undersigned recommends that the Court defer to the undersigned's initial finding of probable cause.

In any event, even if the undersigned assumes that the good faith exception does not apply because the affiant made an intentional misstatement with the requisite state of mind, and even after excising the misstatement from the affidavit, the undersigned would nevertheless find that the remaining information in the affidavit was sufficient to support a finding of probable cause. *See U.S. v. Namer*, 680 F.2d 1088, 1093 (5th Cir. 1982) ("[I]f a search warrant affidavit contains a material misstatement made intentionally or with reckless disregard for the truth, the court should excise the offensive language from the affidavit and determine whether the remaining portion establishes probable cause."). To explain, Defendant's presence at the transactions is immaterial because when Defendant applied to become authorized to accept SNAP benefits, she acknowledged full responsibility for all of her employees' actions. [*See* doc. # 56-1, p. 5]. More importantly, Defendant's presence is immaterial because the relevant inquiry in a probable cause analysis is whether "there is a fair probability that contraband or evidence of a crime will be found *in a particular place*," not whether there is a fair probability that evidence of a crime will be found as to a particular Defendant. *Illinois v. Gates*, 462 U.S. 213, 214 (1983) (emphasis added); *see also U.S. v. Simpson*, 2011 WL 721912, at *12 (N.D. Tex. 2011) ("[T]he relevant connection for probable cause is between the *places to be searched* and the alleged criminal activities.").

      iii. Probable Cause to Search Defendant's Home

Finally, Defendant argues that the warrant was defective with respect to the 761 Moore Road residence (Defendant's home) because the warrant application did not allege that any

illegal activity took place there. [doc. # 57, p. 3]. According to Defendant, "[a]ll of the undercover operations took place at Dee's Grocery" and "no witness [saw] any unlawful activity take place at the house." *Id.*

Defendant's argument is unavailing because the relevant inquiry is not whether any unlawful activity took place at the residence, but, as above, whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 214. Stated somewhat differently, when an affidavit purports to establish probable cause, a court must determine whether the affidavit establishes "a nexus between the house to be searched and the evidence sought." *U.S. v. Nguyen*, 172 F. App'x 558, 561 (5th Cir. 2006). "The nexus may be established by direct observation or through normal inferences as to where the articles sought would be located." *Id.* (internal quotation marks omitted).

Here, the Government sought to search the residence to find "fruits and evidence of violations of food stamp fraud, wire fraud, theft of government property, and criminal conspiracy . . . ." [doc. # 56-1, p. 1]. The affidavit that the Government used to obtain the warrant included first and second-hand accounts of undercover transactions that agents conducted at Dee's, set forth statistical and comparative charts and tables, and provided detailed information indicating that Defendant redeemed SNAP benefits on a monthly basis that far exceeded stores of similar inventory. *Id.* In order to establish that the materials sought in connection with the aforementioned averments could be located in Defendant's residence, Agent Moses averred:

> 9. Based upon my training and experience in SNAP fraud investigations of individuals and businesses involved in SNAP trafficking, I am aware of the following:
>
> > a. Businesses and individuals involved in SNAP trafficking keep cash on hand to buy SNAP benefits from recipients. The cash is typically maintained

> at the business location and in the case of an individual, on their person or in the areas under their control such as automobiles and personal residence.
>
> * * *
>
> b. Businesses and individuals involved in the illegal acquisition of SNAP benefits often keep ledgers and documents reflecting their purchases of SNAP benefits for cash, as well as ledgers and papers with EBT card numbers and PINs. These ledgers and documents are often kept in . . . their residences . . . .
>
> * * *
>
> g. [Defendant] listed 761 Moore Road, Monroe, Louisiana as a residence on the WIC applications from 2009 and thereafter on each application update or renewed [sic].
>
> h. During surveillance, the vehicles described herein this application have been observed at both the residence and the store during the course of the investigation. Through surveillance and undercover operations, [Defendant] has been observed bringing 'buy' money to the store in the Black 2010 Buick LaCrosse that is registered to [Defendant] at 761 Moore Road, Monroe, Louisiana.
>
> * * *
>
> 2. It is the experience of the Affiant that retail grocery and convenience businesses have computer devices in their . . . residences to record general business activity such as recording sales and expenses such as the purchase and inventory control of vendor products that are sold for retail in stores.

*Id.* at 11-15.

Agent Moses, through inferences that she could deduce based on her training and experience, sufficiently established a nexus between Defendant's residence and the alleged illegal activity. While the circumstances and observations set forth in the affidavit created no certainty that the agents would find evidence in the residence, they did create a "fair probability"

that such evidence would be found.[3]

Defendant, in the end, does not provide the undersigned with any reason to reverse the prior probable cause finding. Accordingly, Defendant's Motion, with respect to the arguments concerning probable cause, should be **DENIED**.

B. Fruit of the Poisonous Tree

Defendant argues that the statements she provided during the search of her residence should be suppressed because they constitute fruits of the defective warrant. [doc. # 53-1, p. 1]. Defendant fails to expound upon her argument. Apparently, she relies on the arguments listed above to support her assertion that the warrant was defective. For reasons stated above, however, Defendant has failed to establish that assertion. Thus, Defendant's Motion, with respect to this argument, should be **DENIED**.

C. Involuntary Confession

Defendant argues that the inculpatory statements she provided during the search should be suppressed because she did not make them voluntarily. *Id.* The following comprises the entirety of Defendants argument: "[A]gents also questioned mover without the presence of a lawyer and under the duress of agents who had entered her home against her will." *Id.*

Notably, Defendant does not argue, and the record does not indicate, that her interview was custodial.[4] According to the Government's "Memorandum of Interview," special agents

---

[3] Because the undersigned finds that probable cause existed to support the warrant's issuance, the undersigned does not reach the issue of whether the search would be valid under the good faith exception to the warrant requirement.

[4] At this point, Defendant's right to counsel had not attached because she was not in custody and there were no charges filed against her. *See U.S. v. Mata*, 517 F.3d 279, 291 (5th Cir. 2008).

advised Defendant of her rights, advised Defendant that she was not under arrest and that there was no plan to arrest her, and obtained a completed "Advice and Waiver of Rights" form, [doc. # 56-2]. [doc. # 56-3, p. 1].

The government must establish, by a preponderance of the evidence, the voluntariness of an incriminating statement. *Colorado v. Connelly*, 479 U.S. 157, 169 (1986). To render a confession involuntary, a defendant must demonstrate that law enforcement officers engaged in coercive conduct and that there was a causal link between the coercive conduct and the confession. *U.S. v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004) (citing *Connelly*, 479 U.S. at 163-65). Coercive conduct refers to physical violence and other means calculated to break the defendant's will, such as psychological persuasion. *U.S. v. Broussard*, 80 F.3d 1025, 1034 (5th Cir. 1996).

Here, Defendant's lone argument appears to be that her confession was involuntary because the agents entered her home without a valid search warrant. This argument apparently flows from Defendant's initial argument that the search warrant was defective because the agent who applied for it failed to give the undersigned an affidavit of probable cause. To that extent, the undersigned reiterates that the agent did provide an affidavit and the warrant was not defective.

Aside from that argument, Defendant fails to put forth—and the record is devoid of—any allegations of coercive police tactics. Instead, the record shows that Defendant signed an "Advice and Waiver of Rights" form and indicated that she was aware of her right to remain silent, that she knew of her right to speak with a lawyer before answering any questions, and that

she could stop answering questions at any time. [doc. # 56-2].[5] Moreover, it is clear that Defendant knew she was speaking with special agents. Also of import, the agents interviewed Defendant in her own home. Considering the absence of any allegations of physical force, promises, inducements, threats, or any other form of police overreaching or coercion, the undersigned finds that the Government has demonstrated, by a preponderance of the evidence, that Defendant made her statements voluntarily. Defendant's Motion should be **DENIED** accordingly.

## Conclusion

For the above-stated reasons, **IT IS RECOMMENDED** that the Motion to Suppress, [doc. # 53], filed by Defendant Kimberlia Harris be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen(14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection, response, or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

---

[5] In fact, after making incriminating statements, Defendant decided to consult an attorney and terminated the interview. [doc. # 56-3, p. 2].

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, Monroe, Louisiana, this 1st day of July, 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE